NOTICE
Decision filed 12/16/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 250586-U

NO. 5-25-0586

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | |
|---|---|
| *In re* ADOPTION OF MARIYA N. and SETH N., Minors ) | Appeal from the |
| ) | Circuit Court of |
| (Devon N. and Jessica N., ) | Christian County. |
| ) | |
| Petitioners-Appellees, ) | |
| ) | |
| v. ) | No. 24-AD-13 |
| ) | |
| Erica W., ) | Honorable |
| ) | Christopher B. Hantla, |
| Respondent-Appellant). ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Presiding Justice Cates and Justice Hackett concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The findings of unfitness and termination of the respondent's parental rights were not against the manifest weight of the evidence.

¶ 2   The respondent, Erica W., appeals the June 24, 2025, order of the circuit court of Christian County which terminated her parental rights with regard to her minor children, Mariya N. and Seth N. On appeal, Erica argues that the circuit court erred in finding her an unfit parent and that the termination of her parental rights was in the children's best interests. For the following reasons, we affirm.

1

¶ 3                          I. BACKGROUND

¶ 4      On May 13, 2024, the petitioners, Devon N. and Jessica N., filed a petition for adoption of Mariyah N. and Seth N. The petition stated that Devon N. is the natural father of the children and that he consented to Jessica, his wife, adopting the children. The children had lived with Devon since 2019, pursuant to a parenting order entered in Christian County case No. 17-F-46. The petition stated that, pursuant to the parenting order, Erica received no parenting time and did not pay support for the children. Additionally, she had no contact with the children since 2019. The petition alleged that Erica was an unfit person pursuant to section 50/1 of the Adoption Act (750 ILCS 50/1(D) (West 2022)), specifically that she "failed to demonstrate a reasonable degree of interest, concern, or responsibility in the minor children and a failure to parent pursuant to 750 ILCS 50/1(l) [*sic*]." The petition also alleged that Erica showed evidence of intent to forgo her parental rights by failing to communicate, contact, or visit the children for a period of 12 months. *Id.* § 50/1(n).

¶ 5      The matter proceeded to a hearing on the petition on September 10, 2024. Devon testified on his own behalf. He stated that, 11 years prior to the filing of the petition, in 2013, he was in a relationship with Erica and they had two children, Mariyah and Seth. A family law case between them began in 2017, and Erica and Devon originally had equally split parenting time. Approximately six months into the split time, Erica lost custody because the Department of Children and Family Services (DCFS) removed the children from her care due to drug use and failure to care for the children. In November 2019 an agreed parenting order placed full custody of the children in Devon's care with visitation with Erica. She made phone calls to the children for roughly four months after the order but then stopped calling. Roughly two years later, she sent one

message to Devon but never followed up with more messages, calls, or letters. She also never attended any birthday or holiday parties and never provided financial support to the children.

¶ 6 Devon testified that both children are doing very well in school and maintain close relationships with Jessica, as well as with their stepsibling and half-sibling. The petitioners provided exhibits of the children's grades, the guardian *ad litem* (GAL) report filed in 2023, and the 2019 parenting order. The GAL report, filed April 24, 2023, stated, "I believe terminating [*sic*] of parental rights is probably in the best interest of the minor children based upon what I have observed so far." Devon also detailed incidents of concern as to Erica's parenting abilities.

¶ 7 On cross-examination, respondent's counsel presented the 2019 parenting order as evidence, which stated that the parties would agree on parenting time, and Erica was to be informed of all school or extra-curricular activities. Devon stated that he believed Erica should have requested information regarding the children. Counsel also presented Devon with a petition for parenting time filed on May 3, 2022, which is not included in the record on appeal. Devon stated he never saw the petition, and was unaware that Erica wanted any parenting time. He believed she only wanted to speak to the children, not become fully involved in their lives again. Devon also testified as to DCFS's prior involvement due to Erica's drug issues and her placing the children at risk. Devon stated that he and Erica had not interacted since 2019, but he was aware that she went through drug court and mental health services.

¶ 8 Jessica then testified. She stated that she and Devon were married, and that she and the children have maintained a positive relationship since they met. Jessica is involved with the children's daily life tasks. She had a child from a previous relationship and has primary custody over her. All the children get along and attend the same school. Jessica testified that she cares for and loves the children. Erica never reached out to Jessica in any form of communication. Jessica

stated that she is willing to take over parental rights for the children and all the included responsibilities. On cross-examination, Jessica stated that she and Devon discussed the adoption petition with the children before filing it to ensure the children wanted Jessica to adopt them. They only discussed Erica with the children when necessary for court proceedings.

¶ 9     The hearing continued on November 21, 2024. Erica's counsel called two witnesses to testify as to her involvement in Problem Solving Court (Drug Court) in Christian County. Sue Paso, a counselor, testified that Erica completed the program and is still involved in counseling. Jason Domonousky, a case manager, testified that he spoke with Erica about her participation in the program. Neither witness observed Erica interact with her children.

¶ 10    Erica then testified on her own behalf. She stated she was presently employed and had been for three years. Erica testified that she had not seen either Mariyah or Seth since 2019. She stated that she began Drug Court in 2021 and completed it in 2023. In 2022, she filed a petition for visitation of the children. Prior to filing that petition, she missed court dates due to her addiction and preferred for the children not to see her in active addiction or while in custody.

¶ 11    Prior to completing Drug Court, Erica stated that she did not attempt to make contact with her children, stating, "I was in my addiction and couldn't even take care of myself at the time." Erica testified that after she completed drug court, she messaged Devon on Facebook and was blocked, and was unable to reach his phone number. Erica stated she thinks she is now in a position to have a positive influence on the children, and she should be given the opportunity because, "I feel like any parent should get a second chance and start with supervised visitation and build the relationship back up with them." She stated she wished to build a relationship with the children slowly so as not to cause trauma to them. Erica also described her addiction issues and how she remains sober now.

4

¶ 12    On cross-examination, Erica stated that she did not have contact with the children while in active addiction, totaling three years, before attempting contact again through Devon before being blocked. When asked, "So would you admit that you failed to maintain a reasonable degree of interest or responsibility as it relates to your children?", she responded, "Absolutely because I was in my addiction." Erica stated that she knew where Devon resided with the children, but did not send any letters, cards, gifts, or any type of financial support to them.

¶ 13    The parties submitted written closing arguments. On June 24, 2025, the circuit court entered an order of adoption, finding that Erica was an unfit parent, stating that "she has admitted that she failed to maintain a reasonable degree of interest in the minor children" and failed to contact the minor children within a period of 12 months. The order found it in the children's best interests to terminate Erica's parental rights. The order then granted the adoption to Devon and Jessica. Erica timely appealed.

¶ 14                                II. ANALYSIS

¶ 15    On appeal, Erica argues that the finding of unfitness was against the manifest weight of the evidence, and that the termination of her parental rights was not in the children's best interests.

¶ 16                            A. Standard of Review

¶ 17    A finding of parental unfitness will not be disturbed on appeal unless it is against the manifest weight of the evidence. *In re C.N.*, 196 Ill. 2d 181, 208 (2001). A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent. *Id.* The circuit court's finding of unfitness is given great deference because it has the best opportunity to view and evaluate the parties and their testimony. *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1064 (2006). This court, therefore, does not reweigh the evidence or reassess the credibility of the witnesses. *In re M.A.*, 325 Ill. App. 3d 387, 391 (2001). Each case concerning parental fitness is unique and

5

must be decided on the particular facts and circumstances presented. *In re Gwynne P.*, 215 Ill. 2d 340, 354 (2005). Because each of the statutory grounds of unfitness is independent, the trial court's finding may be affirmed where the evidence supports a finding of unfitness as to any one of the alleged grounds. *In re C.W.*, 199 Ill. 2d 198, 217 (2002). We apply the same standard in reviewing the circuit court's best interest determination. *In re Baby Boy*, 2025 IL App (4th) 241427, ¶ 74.

¶ 18                                    B. Unfitness

¶ 19    A parent may be found unfit based on his failure to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare. 750 ILCS 50/1(D)(b) (West 2024). In determining whether a parent has shown a reasonable degree of interest, concern or responsibility for a child's welfare, courts consider a parent's efforts to visit and maintain contact with the child, as well as other indicia of interest, such as inquiries into the child's welfare. *In re Adoption of Syck*, 138 Ill. 2d 255, 278-79 (1990). The interest, concern, or responsibility must be objectively reasonable. *In re M.J.*, 314 Ill. App. 3d 649, 657 (2000).

¶ 20    Here, the circuit court found that Erica was an unfit parent because she failed to maintain a reasonable degree of interest, concern, or responsibility as to the children's welfare (750 ILCS 50/1(D)(b) (West 2024)), and there was evidence she intended to forgo her parental rights by failure to contact the children in any way within a period of 12 months (*id.* § 50/1(D)(n)).

¶ 21    On appeal, Erica specifically argues that the circuit court primarily relied upon the failure to maintain contact with the children, but this failure was due to her addiction and Devon's obstruction of communication. Relying on *In re Adoption of Syck*, 138 Ill. 2d at 280-81, Erica argues that the circuit court should have taken into account her situation in life and gave her circumstances more weight when considering the evidence. In *Syck*, the court found that there was not clear and convincing evidence that the mother failed to maintain a reasonable degree of interest,

concern, and responsibility as to the minor. *Id.* at 280. The court stated that it considered the mother's "difficult situation" in life, including her limited education, employment opportunities, poor financial condition, young age, and lack of support from friends or family. *Id.* at 281.

¶ 22    *Syck*, however, is distinguishable from the present case. In *Syck*, the mother made several phone calls to the paternal grandmother of the minor child over the course of four years, but was unable to reach the minor's father more than a few times and never spoke with the minor himself. *Id.* at 259-67. The mother also sent letters on holidays and the minor's birthday, and she occasionally sent gifts. *Id.* at 267-69. The record in *Syck* showed years of the mother attempting to reach the minor, but being thwarted by the father and paternal grandmother from speaking to him, seeing him, or even receiving pictures of him. *Id.* at 259-69. *Syck* showed multiple attempts over several years to reach the minor child.

¶ 23    Erica, however, testified that she had attempted to send only one message to Devon regarding the children. She never sent letters, cards, or gifts, despite knowing where the children lived for several years. She never attempted to contact Devon or the children through any other means or mutual contacts. The circuit court heard Erica testify that she had not maintained a reasonable degree of interest in or responsibility for the children and that she had not made contact with them for more than five years by the time of the hearing. Erica claimed that Devon prevented her from contacting the children, but Devon testified to the opposite. As previously stated, this court will not reweigh the evidence or reassess the credibility of the witnesses, as the circuit court has the best opportunity to view and evaluate the parties and their testimony. *In re M.A.*, 325 Ill. App. 3d at 391; *In re Daphnie E.*, 368 Ill. App. 3d at 1064.

¶ 24    The circuit court heard evidence of Erica's addiction issues in the past and her treatment to maintain sobriety. Erica even testified that she did not see her children during her addiction issues

7

because she did not want them to see her in that state. Despite hearing the evidence of Erica's circumstances and treatment, the circuit still found Erica to be an unfit parent. The circuit court's finding, by clear and convincing evidence, that Erica is an unfit parent pursuant to section 1(D)(b) of the Adoption Act, for failure to maintain a reasonable degree of interest, concern or responsibility as to the children's welfare, was not against the manifest weight of the evidence.

¶ 25 The circuit court's order also found that Erica was an unfit parent due to demonstrated evidence of an intent to forgo her parental rights, as shown by her failure for a 12-month period to visit or communicate with the children. 750 ILCS 50/1(D)(n) (West 2024). The 12-month line of demarcation begins with the date of the last visit or communication between the parent and the child. *Douglas R.S. v. Jennifer A.S.*, 2012 IL App (5th) 110321, ¶ 7.

¶ 26 It is undisputed that no communication or visitation occurred between Erica and the children after 2019. Erica claims that this was due to Devon preventing her from messaging him, but she attempted only one message and never called or wrote to the children's known address. She testified that she filed for visitation in 2022, but no further information was provided about that petition, and it is not included in the record. The circuit court's finding by clear and convincing evidence that Erica is an unfit parent pursuant to section 50/1(D)(n) of the Act was not against the manifest weight of the evidence.

¶ 27                          C. Best Interest

¶ 28 Erica also challenges the circuit court's best-interest finding. Once the court makes a finding of unfitness pursuant to the Adoption Act, the court then determines whether it is in the best interests of the child that parental rights be terminated. *In re D.T.*, 212 Ill. 2d 347, 352 (2004). The petitioning party is required to prove by a preponderance of the evidence that it is in the child's best interest to terminate parental rights. *Id.* at 365. When reviewing a circuit court's determination

8

that it is in a child's best interest to terminate parental rights, a reviewing court will apply the manifest weight of the evidence standard. *In re B.B.*, 386 Ill. App. 3d 686, 697 (2008).

¶ 29    In deciding whether termination of parental rights is in a child's best interests, the circuit court must consider several statutory factors, including (1) the child's physical safety and welfare; (2) the child's sense of attachment; (3) the need for permanence and stability and the continuity of the child's relationships with parental figures, siblings, and other family members; and (4) the preferences of the individuals available to provide care. 705 ILCS 405/1-3(4.05) (West 2024). The circuit court may also consider the likelihood of the child being adopted. *In re Za. G.*, 2023 IL App (4th) 220793, ¶ 54. Although the circuit court must consider all applicable statutory factors, it is not required to refer to each individual factor in rendering its decision. *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19.

¶ 30    Erica argues that the factors presented during the hearing, "weigh heavily against termination." However, the evidence presented was more than sufficient to support the circuit court's finding that termination of Erica's rights was in the children's best interest. The children have not visited with, or even spoken to, Erica in over five years. During that time, Devon and Jessica married, resulting in the children receiving a stepsibling and a half-sibling. Both parents testified that the children are bonded to their siblings, play with them, and all contribute to helping each other out. The children refer to Jessica as "mom," and she is very involved in their daily lives, including school pickup and drop-off, activities, and overall care. The family moved to a bigger home with space for everyone to live and engage in outdoor activities. Devon has been caring for the children since 2019, and Jessica began caring for the children approximately two years prior to the filing of the petition and has continued to do so.

¶ 31     We find that the petitioners proved by a preponderance of the evidence that termination of Erica's parental rights was in the children's best interests. The opposite conclusion is not clearly evident. As such, the circuit court's termination of Erica's parental rights was not against the manifest weight of the evidence.

¶ 32                              III. CONCLUSION

¶ 33     For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 34     Affirmed.